**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 16-7671**

───────────────

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

CECIL MCDONALD DAVIS,

        Defendant - Appellant.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, Senior District Judge. (1:94−cr−00370−TSE−1; 1:16–cv–00832–TSE)

───────────────

Argued: September 13, 2022                     Decided: November 10, 2022

───────────────

Before NIEMEYER and WYNN, Circuit Judges, and FLOYD, Senior Circuit Judge.

───────────────

Reversed and remanded by published opinion. Judge Wynn wrote the opinion, in which Judge Niemeyer and Senior Judge Floyd joined.

───────────────

**ARGUED:** Laura Allison Herzog, LATHAM & WATKINS, LLP, Washington, D.C., for Appellant. Aidan Taft Grano-Mickelsen, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

───────────────

WYNN, Circuit Judge:

Cecil McDonald Davis filed a motion under 28 U.S.C. § 2255, challenging his 18 U.S.C. § 924(c) conviction for using a destructive device in furtherance of a crime of violence. The district court denied his motion and Davis appealed. Because we conclude that the federal arson statute which served as the predicate for Davis's § 924(c) conviction is not categorically a crime of violence, we reverse and remand for further proceedings.

I.

Much of the background for this case is laid out in a prior opinion. *United States v. Davis*, 98 F.3d 141 (4th Cir. 1996). We briefly recount the relevant facts here.

In December 1993, Davis conspired with Tiffini Fairfax and Walter Langston to get revenge on Brenda Williams for Williams's suspected cooperation with a federal drug investigation. The initial plan was for Langston to pour gasoline on Williams's back porch, "set the gasoline on fire, and leave a gas can filled with gasoline on the porch to go off like a bomb." *Id.* at 143. This attempt failed. Two days later, the group was more successful. This time, Langston threw a Molotov cocktail onto Williams's porch, which exploded and scorched a section of the exterior wall. Although three people were in the house at the time, no one was injured and the fire did not spread beyond the back porch. On both occasions, Davis paid Langston for his efforts.

Davis was subsequently indicted on four counts: conspiracy to commit arson in violation of 18 U.S.C § 371 (Count 1); attempted arson in violation of 18 U.S.C § 844(f) (Count 2); arson in violation of 18 U.S.C. § 844(f) (Count 3); and use of a destructive

2

device in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) (Count 4). The indictment listed Count 3, the arson conviction, as the predicate crime of violence to support Davis's § 924(c) conviction. Davis proceeded to trial where a jury found him guilty on all four counts. Thereafter, the district court imposed a total sentence of 480 months: 120 months on Counts 1–3 to run concurrently and, after the court expressed concern about the length of the sentence but concluded it was legally bound to impose it, 360 months on Count 4 to run consecutively with the other sentences.

We affirmed. *Id.* Davis then filed his first motion under 28 U.S.C. § 2255, which the district court denied. We again affirmed. *United States v. Davis*, 13 F. App'x 68 (4th Cir. 2001) (per curiam).

In June 2016, we granted Davis authorization to file a successive § 2255 motion on the basis of *Johnson v. United States*, which held that the residual clause of the Armed Career Criminal Act was unconstitutionally vague. 576 U.S. 591, 597 (2015). Davis then filed his second § 2255 motion, which is now before the Court. In the present motion, Davis challenges his § 924(c) conviction, arguing that, after *Johnson*, his federal arson conviction under § 844(f) is not a crime of violence to sustain his § 924(c) conviction.

The district court denied the motion. *United States v. Davis*, No. 1:16-CV-832, 2016 WL 11257359 (E.D. Va. Sept. 28, 2016). First, the district court ruled that Davis's motion was untimely filed, holding that *Johnson* did not start a new limitations period for filing § 2255 motions that challenged § 924(c) convictions. *Id.* at *3–4. The district court also held, in the alternative, that federal arson under § 844(f) was categorically a crime of violence that could support a § 924(c) conviction. *Id.* at *5.

3

Davis timely appealed. We initially granted the certificate of appealability only on the issue of timeliness, but later expanded the certificate to include Davis's claim that his § 924(c) conviction was not supported by a proper predicate conviction.

## II.

On appeal, the Government affirmatively waived any challenge to timeliness. Government's Br. at 8. So the sole question left for review is whether Davis's § 844(f) arson conviction categorically qualifies as a crime of violence to sustain his § 924(c) conviction. We review de novo whether an offense qualifies as a crime of violence. *United States v. Mathis*, 932 F.3d 242, 263 (4th Cir. 2019).

## A.

Section 924(c) prohibits the use of a firearm "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). A "firearm" is statutorily defined to include a "destructive device," which is further defined to include "any explosive, incendiary, or poison gas." 18 U.S.C. § 921(a)(3)–(4). Davis does not dispute that a Molotov cocktail is a "destructive device."

Under the statutory scheme, a defendant can "be convicted of both the underlying 'crime of violence' and the additional crime of utilizing a [destructive device] in connection with" such a crime. *United States v. Taylor*, 979 F.3d 203, 206 (4th Cir. 2020), *aff'd*, 142 S. Ct. 2015 (2022). A "crime of violence" is, in turn, defined as a felony offense that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of

4

committing the offense." 18 U.S.C. § 924(c)(3). But the Supreme Court has found subsection (B) to be unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). So, to sustain Davis's conviction on Count 4, his § 844(f) arson charge must qualify as a crime of violence under subsection (A), often referred to as the "force clause."

We employ the categorical approach to determine whether an offense is a crime of violence under the force clause. *Taylor*, 979 F.3d at 207. The categorical approach "focuses on the *element*s of the prior offense rather than the *conduct* underlying the conviction" and asks whether those elements "necessarily require 'the use, attempted use, or threatened use of physical force.'" *Id.* (quoting § 924(c)) (citations omitted). If the least culpable conduct punished by the underlying offense can be committed without such use, it "is not 'categorically' a 'crime of violence.'" *Id.* Still, "there must be a realistic probability, not [just] a theoretical possibility, that the minimum conduct would actually be punished under the statute." *United States v. Allred*, 942 F.3d 641, 648 (4th Cir. 2019) (quotations and citation omitted).

B.

While the categorical approach has its close cases, its application here is straightforward. The force clause of § 924(c) prohibits "the use, attempted use, or threatened use of physical force against the person or property *of another*." 18 U.S.C. § 924(c)(3)(A) (emphasis added). By its terms, the force clause does not reach the use of physical force against property solely owned by the defendant. It is for this reason that the Supreme Court, in interpreting a substantially similar definition of "crime of violence" in 18 U.S.C. § 16(a), has concluded that many state arson laws would not constitute crimes

5

of violence to the extent these laws define arson "to include the destruction of one's own property."[1] *Torres v. Lynch*, 578 U.S. 452, 466 (2016). Likewise, this Court, in an unpublished opinion, held that federal arson under the neighboring provision of 18 U.S.C. § 844(i) was not a crime of violence for § 924(c) purposes since it applied to attempts to "damage or destroy '*any* building, vehicle, or other real or personal property used in interstate . . . commerce,'" thus including the "destruction of a defendant's own property." *United States v. Wilder*, 834 F. App'x 782, 784 (4th Cir. 2020) (per curiam) (quoting 18 U.S.C. § 844(i)).

This is enough to resolve the case here. Section 844(f), the predicate offense, could easily encompass force against a defendant's own property. Although it has since been amended, at the time of Davis's conviction in 1994, § 844(f) applied to anyone who

> maliciously damages or destroys . . . by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned, possessed, or used by, or leased to, the United States, any department or agency thereof, or any institution or organization receiving Federal financial assistance[.]

18 U.S.C. § 844(f) (1994).[2] This version of § 844(f) swept broadly. It applied not just to property that was wholly or partially "owned," "possessed," or "leased" by the United States, a federal agency, or any organization receiving federal aid, but also to property that

---

[1] Like § 924(c)(3)(A), 18 U.S.C. § 16(a) defines a "crime of violence" to mean "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

[2] In 1996, after Davis's conviction, the statute was modified to no longer include the phrase "used by." Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, § 708(a)(2), 110 Stat. 1214, 1296.

was merely "used by" the same. In other words, an individual who wholly owned a property and simply let a qualifying federal organization use it could be liable under § 844(f) if the individual maliciously damaged that property using fire or an explosive.

Such was the case in *United States v. Koen*, 982 F.2d 1101 (7th Cir. 1992), *holding modified on other grounds by United States v. Coleman*, 22 F.3d 126 (7th Cir. 1994). In that case, the Seventh Circuit upheld an arson conviction under § 844(f) when an individual, Charles Koen, destroyed a building that he "wholly owned" because a business that he founded "operated out" of the building and received federal funds. *Id.* at 1104. Koen was thus convicted under § 844(f) for arson against a building *he owned*—not one "of another," as is required for a crime to serve as a § 924(c) predicate.

At oral argument in this matter, the Government acknowledged that it faced an "uphill" climb to demonstrate that property that is merely "used by" the federal government falls within the ambit of § 924(c). Oral Argument at 3:52, *United States v. Davis*, No. 16-7671 (4th Cir. Sept. 13, 2022), https://www.ca4.uscourts.gov/OAarchive/mp3/16-7671-20220913.mp3. To attempt to overcome that hurdle, the Government argues that § 844(f) arson *always* involves the property "of another" because it is limited to property owned, possessed, used by, or leased to the United States, federal agencies, or organizations receiving federal funds. Government's Br. at 18. Put differently, the Government seeks to limit § 844(f) to "arson against any *organizational* property, a qualification that by definition removes the possibility that an individual can set fire to his own property in which no other person or legal entity has any interest." *Id.* (quotations omitted). But the

7

plain text of the statute does not use the phrase "organizational property." It instead encompasses property merely "used by" an organization receiving federal funds.[3]

The reach of this provision is demonstrated by the facts of this case. Davis's victim, Williams, rented her townhouse from a private entity. *Davis*, 98 F.3d at 145. Williams also received financial assistance from the Virginia Housing Development Authority ("VHDA"), which in turn received federal funding from the U.S. Department of Housing and Urban Development. *Id.* In affirming Davis's conviction, we held that the financial assistance provided by the VHDA to Williams was "sufficient evidence for the jury to determine that the VHDA used Miss Williams' house." *Id.* If Davis himself, rather than Williams's landlord, had owned the townhouse, he would have certainly still been liable under the 1994 version of § 844(f) because he committed arson against a property "used by" an "organization receiving Federal financial assistance," the VHDA. But as the owner of the townhouse in this hypothetical, he would not have committed arson against the property "of another." And if there was any doubt that the Government would prosecute in such a situation, the Seventh Circuit's decision in *Koen* demonstrates that it has done so in the past.

---

[3] The Government also argues that "of" is "a broad word, encompassing a wide range of relationships between its subject and object," including mere possession. Government's Br. at 21 n.5. The implication, which goes unstated, appears to be that property that is merely *used by* another becomes the property "*of* another." We need not sketch out the full contours of what would constitute the "property of another" for purposes of § 924(c). To resolve this case, it is enough to observe that the plain language of the statute envisions a form of ownership and not mere use. *See* Reply Br. at 6 ("If Alcoholics Anonymous holds its meetings in a church basement . . . no one would say the church becomes 'the property of AA.' AA is merely using the church building.").

Section 844(f)'s reference to property "used by" the federal government also distinguishes this case from our prior decision in *Mbea v. Gonzales*, 482 F.3d 276 (4th Cir. 2007), on which the district court relied. In *Mbea*, we held that a D.C. arson statute qualified as a categorical crime of violence under 18 U.S.C. § 16(a). *Id.* at 280. Although the "crime of violence" definitions in § 16(a) and § 924(c) are nearly identical, the arson statutes at issue are not. The D.C. statute made it an offense to commit arson against "the property, in whole or in part, *of another person*, or any church, meetinghouse, schoolhouse, or any of the public buildings in the District, *belonging to the United States or to the District of Columbia*." D.C. Code Ann. § 22-401 (1994) (emphasis added).[4] Critically, the D.C. statute expressly required the property at issue to belong to another person, the United States, or the District of Columbia. The 1994 version of § 844(f) did not. That distinction is dispositive.

Because the version of § 844(f) that Davis was convicted under criminalized the arson of property fully owned by the defendant, and not just that of the property "of another" as required by § 924(c), it is not categorically a crime of violence.[5] It therefore cannot serve as the predicate crime for Davis's § 924(c) conviction.

---

[4] The statute has since been recodified as D.C. Code Ann. § 22-301.

[5] Davis also argues that § 844(f) is not a crime of violence because it can be committed with a *mens rea* of recklessness. Opening Br. at 24–28. Since we find that the 1994 version of § 844(f) is not a crime of violence because it could encompass arson against the defendant's own property, we need not reach Davis's *mens rea* argument.

III.

For the foregoing reasons, we reverse the district court's denial of Davis's § 2255

motion. We remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*