**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2222
_____

UNITED STATES OF AMERICA

v.

SAMUEL JENKINS,
                    Appellant
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 2-08-cr-00392-001)
District Judge: Honorable Eduardo C. Robreno
_____

Argued on January 25, 2023

Before: HARDIMAN, KRAUSE, and MATEY, *Circuit
Judges*.

(Filed: May 18, 2023)

Abigail E. Horn [Argued]
Brett G. Sweitzer
Helen A. Marino

Federal Community Defender Office for the Eastern District of
Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

     *Counsel for Appellant*

Jacqueline C. Romero
Bernadette A. McKeon
Robert A. Zauzmer [Argued]
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

     *Counsel for Appellee*

———————

## OPINION OF THE COURT

———————

HARDIMAN, *Circuit Judge*.

This appeal requires us to answer a legal question: is second-degree aggravated assault of a protected individual in violation of 18 Pa. Cons. Stat. § 2702(a)(3) a "violent felony" under the Armed Career Criminal Act (ACCA)? We hold it is not.

I

In 2008, Samuel Jenkins pleaded guilty to possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). He was sentenced to a mandatory minimum under

ACCA because he had three prior convictions "for a violent felony or a serious drug offense." 18 U.S.C. § 924(e). Those offenses included two prior drug convictions and a conviction for aggravated assault under 18 Pa. Cons. Stat. § 2702(a)(3). Section 2702(a)(3) applies to one who "attempts to cause or intentionally or knowingly causes bodily injury" to certain persons "in the performance of duty." Jenkins was sentenced to 15 years' imprisonment and 5 years' supervised release. He did not appeal.

While Jenkins was serving his sentence, the Supreme Court breathed life into his case in *Johnson v. United States*, 576 U.S. 591 (2015). At the time of Jenkins's sentencing, a conviction was for a "violent felony" under ACCA if the crime: (1) had "as an element the use, attempted use, or threatened use of physical force against the person of another" (the elements clause); (2) was "burglary, arson, or extortion, [or] involve[d] the use of explosives" (the enumerated-offense clause); or (3) "otherwise involve[d] conduct that present[ed] a serious potential risk of physical injury to another" (the residual clause). 18 U.S.C. § 924(e)(2)(B). In *Johnson (2015)*, the Supreme Court held that the residual clause is unconstitutionally vague. 576 U.S. at 597. The Court later made *Johnson (2015)* retroactive on collateral review. *Welch v. United States*, 578 U.S. 120, 135 (2016). So Jenkins's Section 2702(a)(3) conviction for a non-enumerated offense qualifies as a predicate violent felony only if it satisfies the elements clause.

Citing *Johnson (2015)*, Jenkins moved to correct his sentence under 28 U.S.C. § 2255. He argued that because Section 2702(a)(3) can be violated without the use, attempted use, or threatened use of physical force, it is not a "violent

3

felony" under ACCA's elements clause, so his enhanced sentence under ACCA was unlawful.[1]

The District Court rejected this argument and denied Jenkins's motion. Recognizing room for disagreement, the District Court granted a certificate of appealability. Jenkins timely appealed.

## II[2]

### A

When determining whether a prior conviction was for a "violent felony" under ACCA, our review is plenary, *see United States v. Peppers*, 899 F.3d 211, 220 (3d Cir. 2018), and we apply the familiar categorical approach, *Descamps v. United States*, 570 U.S. 254, 261 (2013). We look only to the elements of the offense, not the defendant's actual conduct, and

---

[1] Jenkins's sentence was unlawful only if it was based on the unconstitutional residual clause. He can "demonstrate that his sentence necessarily implicates the residual clause," by showing that "he could not have been sentenced under the elements or enumerated offenses clauses based on current case law." *United States v. Peppers*, 899 F.3d 211, 235 n.21 (3d Cir. 2018). In other words, if Jenkins can show that his Section 2702(a)(3) conviction satisfies neither the elements nor the enumerated offense clause, he has proven that the only statutory basis for the sentence was the unconstitutional residual clause.

[2] The District Court had jurisdiction under 18 U.S.C. § 3231 and 28 U.S.C. § 2255. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).

evaluate the minimum conduct criminalized by the statute. *United States v. Abdullah*, 905 F.3d 739, 744 (3d Cir. 2018) (citation omitted).[3] Pennsylvania's aggravated assault statute is divisible, so we apply the modified categorical approach to determine whether the subsection under which Jenkins was convicted, 18 Pa. Cons. Stat. § 2702(a)(3), categorically proscribes a violent felony. *United States v. Ramos*, 892 F.3d 599, 609 (3d Cir. 2018). If the state-law statute sweeps more broadly than the federal comparator—that is, if Section 2702(a)(3) criminalizes any conduct that is not a violent felony under ACCA—no conviction under the statute is a predicate offense, regardless of the underlying facts. *See id.* at 606.

Because Jenkins's aggravated assault conviction was indisputably not for an enumerated offense, this appeal turns on ACCA's elements clause. Under that clause, a violent felony is one that has "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). "Physical force" in this context "means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).[4]

---

[3] Because the elements clauses of ACCA's definition of "violent felony" and of the Sentencing Guidelines' definition of "crime of violence" are interpreted consistently, we cite cases interpreting either. *See United States v. Brown*, 765 F.3d 185, 189 n.2 (3d Cir. 2014).

[4] We use "physical force" to have the meaning given it by *Johnson (2010)* in reference to ACCA's definition of "violent felony," unless otherwise indicated.

Section 2702(a)(3) applies to one who "attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty." Section 2702(c) in turn lists categories of people—many of them government employees—ranging from student workers to police officers to the Pennsylvania Governor.

Jenkins argues Section 2702(a)(3) does not have as an element the use or attempted use of physical force because it can be violated by: (1) offensive touching, like spitting or throwing urine, or (2) a failure to act, like withholding food or medical care. The Pennsylvania Supreme Court's decision in *United States v. Harris*, 289 A.3d 1060 (Pa. 2023), supports Jenkins's claim that Section 2702(a)(3) can at least be violated by a failure to act, so it is not a violent felony.[5]

B

We have held that "the use of physical force required by the ACCA cannot be satisfied by a failure to act." *United States v. Mayo*, 901 F.3d 218, 230 (3d Cir. 2018).[6] Applying that rule

---

[5] We hold that Section 2702(a)(3) is not a violent felony because it can be violated by omission, so we take no view on whether it also can be violated by a mere offensive touching.

[6] The Government has argued here and in *United States v. Harris*, No. 17-1861, that this holding from *Mayo* is contrary to Supreme Court precedent, so panels of this Court are not bound to follow it. That argument relies primarily on *United States v. Castleman*, and more specifically the Supreme Court's statement that "a 'bodily injury' must result from 'physical force.'" 572 U.S. 157, 170 (2014). But *Mayo*

to Pennsylvania's aggravated assault statute, we held in *Mayo* that *first-degree* aggravated assault in violation of 18 Pa. Cons. Stat. § 2702(a)(1) *is not* a violent felony because it can be violated by omission. 901 F.3d at 230. That provision applies to a person who "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. Cons. Stat. § 2702(a)(1). But in *United States v. Ramos*, we held that *second-degree* aggravated assault in violation of 18 Pa. Cons. Stat. § 2702(a)(4) *is* a crime of violence (and thus a violent felony, *see supra* n.3). 892 F.3d at 612. Section 2702(a)(4) applies to a person who "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." We reasoned that Section 2702(a)(4)'s bodily-injury and deadly-weapon elements, "[t]aken together," indicate that the provision can be violated only through the use or attempted use of physical force, not by omission. *Ramos*, 892 F.3d at 611–12. Jenkins claims his case is more like *Mayo*, while the Government likens it to *Ramos*.

The Pennsylvania Supreme Court has provided key guidance on this question. *See United States v. Taylor*, 142 S.

---

analyzed and distinguished *Castleman*. *Mayo*, 901 F.3d at 228–30. In the rare cases where we have disregarded a prior panel's holding based on Supreme Court precedent that *predated* the panel, the prior panel opinion "did not either explicitly or implicitly decide the impact of [the Supreme Court precedent] on the issues raised in that appeal." *United States v. Tann*, 577 F.3d 533, 542 (3d Cir. 2009) (citation omitted). That is not the case here, so we are bound by *Mayo* absent en banc intervention or additional clarification from the Supreme Court.

Ct. 2015, 2025 (2022) ("[S]tate courts [are] the final arbiters of state law in our federal system . . . ."). In *United States v. Harris*, 289 A.3d 1060, after granting our petition to certify a question of state law, *id.* at 1061, the Supreme Court interpreted Section 2702(a)(1)—the provision at issue in *Mayo*. It held that "the use or attempted use of physical force is not an element of the crime of aggravated assault under Section 2702(a)(1), and thus the Commonwealth need not prove physical force to sustain a conviction for that offense." *Id.* at 1074. The Court rightly stressed that the meaning of "physical force" under ACCA is a question of federal law, so it decided "only whether Section 2702(a)(1) requires some use of physical force," not whether it is a violent felony under ACCA. *Id.* at 1068–69. The Court explained that "the exercise of direct or indirect physical force is a means by which serious bodily injury can be inflicted [under the statute], but it is not the exclusive means." *Id.* at 1074. Critical to this appeal, the Supreme Court clarified that "serious bodily injury may be caused or attempted under Section 2702(a)(1) by acts of omission." *Id.*

The Court reasoned that "there is no express element in Section 2702(a)(1) requiring the use or attempted use of physical force, or any reference to force at all." *Id.* at 1070. It then turned to the Government's contention that the statute requires causing or attempting to cause serious bodily injury, which necessarily entails the use of physical force. The Court disagreed: "there is no reference in the definition of 'serious bodily injury' to the manner by which an injury must be inflicted, *i.e.*, by force of a physical nature, by psychological or emotional force, by an act of omission, or by other means." *Id.* The Court contrasted subsection (a)(1) with two other subsections of Section 2702 that *do* "codify the manner of

causing a particular bodily injury as an element of the crime." *Id.* at 1070–71 (citing 18 Pa. Cons. Stat. § 2702(a)(4) ("with a deadly weapon"), (a)(6) ("by physical menace")). If the legislature wanted to similarly limit the way subsection (a)(1) can be violated, it would have done so explicitly. *See id.*

*Harris* requires us to conclude that Section 2702(a)(3) can also be violated by omission. Subsection (a)(3) shares two key features with subsection (a)(1) on which the *Harris* court relied. First, the statutory language makes no mention of force. *See Harris*, 289 A.3d at 1070. Second, there is no reference in Section 2702(a)(3) itself, or in the definition of "bodily injury," "to the manner by which an injury must be inflicted." *Id.*

Unlike these similarities, none of the subsections' three differences meaningfully distinguishes subsection (a)(3) from (a)(1) as to whether it can be violated by a failure to act.

*First,* subsection (a)(1) requires "serious bodily injury" rather than just "bodily injury." But if one can cause *serious* bodily injury by omission, it follows that bodily injury can be caused in that way. Indeed, "serious bodily injury" *is* bodily injury; the statute defines it as a particularly harmful subset of "bodily injury." *See* 18 Pa. Cons. Stat. § 2301.

*Second*, subsection (a)(1) has a broader mens rea requirement than subsection (a)(3). It encompasses acts committed "recklessly under circumstances manifesting extreme indifference to the value of human life," 18 Pa. Cons. Stat. § 2702(a)(1)—sometimes referred to as extreme recklessness, *see United States v. Brasby*, 61 F.4th 127, 133 (3d Cir. 2023). Subsection (a)(3), on the other hand, applies only to knowing or intentional conduct. Though the Government highlights this difference, it does not explain why

9

the mens rea element affects whether the statute can be violated by a failure to act. An omission can be knowing or intentional, just as it can be reckless. For example, one can intentionally starve a child. *See Mayo*, 901 F.3d at 227–28 (relying on convictions involving starvation to conclude Section 2702(a)(1) can be violated by a failure to act). This also explains why we must reject the Government's proposed bright-line rule that "requiring proof of the intentional or knowing infliction of (or attempt to inflict) 'bodily injury' categorically requires proof as an element of the use of 'physical force.'" Gov't Br. 12. In *Mayo*, we rejected the Government's similar contention that "causing or attempting to cause serious bodily injury necessarily involves the use of physical force." 901 F.3d at 228. The mens rea modifier added to the Government's proposed rule here provides no meaningful distinction to the proposed rule we rejected in *Mayo*.[7]

*Third*, subsection (a)(1) lacks a victim-status element, whereas subsection (a)(3) applies only to assaults on particular people in the performance of duty. But *Harris* indicated that additional elements are relevant only if they specify *how* a defendant must cause or attempt to cause bodily injury. 289

---

[7] The Government's rule admittedly finds some support in the Supreme Court's statement that "a 'bodily injury' must result from 'physical force.'" *Castleman*, 572 U.S. at 170. But as explained above, we distinguished *Castleman* in *Mayo* by explaining that *Castleman* addressed common-law force and "expressly reserved the question of whether causing 'bodily injury' necessarily involves the use of 'violent force' under the ACCA." *Mayo*, 901 F.3d at 228 (citing *Castleman*, 572 U.S. at 170). And contrary to the Government's argument, we are bound by *Mayo*.

A.3d at 1070–71. This is why subsection (a)(4), which requires causing or attempting to cause bodily injury "with a deadly weapon," cannot be violated by omission. *See Ramos*, 892 F.3d at 612; *Harris*, 289 A.3d at 1070–71. The victim-status element of Section 2702(a)(3) does not relate to the manner of causing injury. So subsection (a)(3) is analogous to (a)(1) and dissimilar to (a)(4) in this respect.

In sum, subsection (a)(3) is similar to subsection (a)(1) in the relevant respects, and different only in ways immaterial to ACCA's elements clause. Under *Harris*'s reasoning, injury under Section 2702(a)(3) can be inflicted by forcible or non-forcible means, including by a failure to act. *Harris*, 289 A.3d at 1070–71, 1074 n.19.

The Government stresses that Jenkins cannot point to a single conviction under Section 2702(a)(3) for a failure to act. But he need not do so. The realistic probability test—which requires defendants to show "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime," *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)—does not apply "where the elements of the offense, whether as set forth in a statute or case law, do not match the generic federal crime," *Zhi Fei Liao v. Att'y Gen.*, 910 F.3d 714, 723 n.9 (3d Cir. 2018); *see also Cabeda v. Att'y Gen.*, 971 F.3d 165, 176 (3d Cir. 2020) ("[O]nce we conclude that the textual breadth of a statute is more expansive than the federal generic crime . . . a petitioner need not show that there is a realistic chance that the statute will actually be applied in an overly broad manner."). In other words, the realistic probability test is implicated only when "the relevant state and federal offenses clearly overlap[]." *Taylor*, 142 S. Ct. at 2025.

11

In this case, they don't overlap. The Pennsylvania Supreme Court made clear that Section 2702(a)(1)—and by implication Section 2702(a)(3)—can be violated by omission as a matter of state law. And under our binding precedent, an omission cannot constitute the use of physical force under ACCA as a matter of federal law. *Mayo*, 901 F.3d at 230. So Section 2702(a)(3) does not overlap with ACCA's definition of a violent felony. The realistic probability test thus plays no role, even if, "as a matter of common sense, it is scarcely conceivable that one could, as a factual matter," violate the statute in the overly broad manner. *Cabeda*, 971 F.3d at 175.

In sum, second-degree aggravated assault in violation of 18 Pa. Cons. Stat. § 2702(a)(3) can be committed by a failure to act, so it is not a "violent felony" under ACCA. At the time of his 18 U.S.C. § 922(g)(1) violation, Jenkins did not have the three predicate offenses necessary to trigger ACCA's penalty provision, § 924(e). So we must reverse the District Court's order denying Jenkins's motion to correct his sentence and remand for further proceedings consistent with this opinion.

\*　　\*　　\*

We acknowledge the bizarre result in this case. We've now held that a type of first-degree aggravated assault in Pennsylvania and one type of second-degree aggravated assault *are not* violent felonies under ACCA even though another type of second-degree aggravated assault *is* a violent felony. The categorical approach requires this upside-down result even though criminal sentences should be governed by justice and fairness, not formalism. The problems created by the categorical approach have been well documented. *See, e.g.*, *United States v. Scott*, 14 F.4th 190, 200–02 (3d Cir. 2021) (Phipps, J., dissenting) (collecting judicial criticisms of the

12

approach); *Harris*, 289 A.3d at 1075 & n.2 (Mundy, J., concurring). It is possible, perhaps even likely, that no defendant will ever be convicted under Section 2702(a)(3) for an act of omission. But since the legislature drafted the statute in a way that does not foreclose that possibility, we are constrained to hold that every Section 2702(a)(3) violator—individuals convicted of assaulting teachers, nurses, and police officers—did not commit a violent felony under ACCA. "What a world." *Cabeda*, 971 F.3d at 176.